UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANIEL JOSEPH MANCUSO,

                        Plaintiff,

        v.                                                        **DECISION AND ORDER**
                                                                  12-CV-642S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY[1],

                        Defendant.


        1.      Plaintiff challenges an Administrative Law Judge's ("ALJ") decision that

Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff

alleges that he has been disabled by Wernicke-Korsakoff syndrome since July 29, 2008.

He contends that his medical condition renders him unable to work, and that he is therefore

entitled to payment of Supplemental Security Income ("SSI") under the Act.

        2.      Plaintiff filed an application for SSI on November 15, 2008 in which he

alleged that he had been disabled since July 28, 2008. His application was denied on

March 5, 2009. On December 10, 2010, Plaintiff and his attorney appeared before an ALJ

for a video hearing. The ALJ considered the case *de novo*, and on December 22, 2010,

issued a decision denying Plaintiff's application for SSI. On May 10, 2012, the Appeals

Council denied Plaintiff's request for review. Plaintiff filed the current civil action on July

9, 2012, challenging Defendant's final decision.[2]

---

        [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.
Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be
substituted, therefore, for Commissioner Michael J. Astrue as Defendant in this suit. No further action
need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security
Act, 42 U.S.C. § 405(g).

        [2] The ALJ's December 22, 2010 decision became the Commissioner's final decision in this case
when the Appeals Council denied Plaintiff's request for review.

3. On March 8, 2013, Defendant filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff filed a Motion for Judgment on the Pleadings on March 9, 2013. After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement. For the reasons set forth below, Defendant's motion is granted.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153

(S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.     While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability (R. at 43);[3] (2) Plaintiff's Wericke-Korsakoff syndrome is a "severe impairment" within the meaning of the Act (R. at 43); (3) Plaintiff did not have an impairment or combination of impairments necessary for finding a disabling impairment under the regulations (R. at 44); (4) Plaintiff retained the ability to lift fifty pounds occasionally and twenty-five pounds frequently, to carry/push/pull up to twenty pounds occasionally and ten pounds frequently, to sit and/or stand during the work day, and could maintain a schedule with the aid of an electronic or pocket calender, but was limited to walking about one-fourth of a mile at a time at a reasonable pace with a cane, and performing simple, routine, low-stress tasks with limited public contact, in an environment where he was not exposed to dangerous moving machinery and unprotected heights (R. at 45); and (5) Plaintiff was unable to perform any of his past relevant work (R. at 48). Further, the ALJ determined, based on testimony from a vocational expert, that a number of jobs existed in significant numbers in the national economy which a person of Plaintiff's age, education, and residual function could perform (R. at 48). Based on the record, the

---

[3] Citations to the underlying administrative record are designated as "R."

ALJ ultimately determined that Plaintiff was not under a disability as defined by the Act at any time through the date of his decision, December 22, 2010 (R. at 49).

10.     Plaintiff first contends that the ALJ did not appropriately address Plaintiff's "cognitive problems due to Wericke-Korsakoff syndrome" (R. at 46) and as such the ALJ's residual functional capacity ("RFC") assessment, and mental RFC assessment in particular, was vague and not supported by substantial evidence. Yet, the ALJ's reliance on the assessment of Dr. Ryan, the State's consulting psychologist, when formulating Plaintiff's mental RFC was not, as Plaintiff suggests, inappropriate. It is well settled that an ALJ is entitled to rely upon the opinions of the state agency medical and psychological consultants, as they are qualified experts in the field of Social Security disability. See 20 C.F.R. §§ 404.1512(b)(8), 404.1513(c), 416.912(b)(8), and 416.913(c). In his opinion, Dr. Ryan tested Plaintiff's ability to do simple calculations, serial threes, recall three objects after one and five minutes, and recite digits both forward and backward (R. at 248). After running these tests, Dr. Ryan observed that Plaintiff possessed the mental dexterity to do simple calculations, serial threes, recall three out of three objects after one and five minutes, and recite six digits forward and four digits backward (R. at 248). The psychologist concluded that Plaintiff's cognitive functioning was in the average ranged with "[g]eneral fund of information actually above average." (R. at 249.) As a result, Plaintiff was found to have "no significant limitation in ability to follow and understand simple directions, perform simple tasks, [or] maintain attention and concentration." (R. at 249.) In contrast, Plaintiff had only a "moderate limitation" in learning new tasks and performing complex tasks. (Id.) As Dr. Ryan was the only psychologist consulted in this case and was the only medical expert who made findings that were more than cursory with regards to Plaintiff's mental capacities, his opinion stands as the bulk of the record evidence which the ALJ

could have relied upon when formulating Plaintiff's mental RFC.

Plaintiff further argues in a footnote that the ALJ erred in giving significant weight to Dr. Ryan's opinion, as it did not constitute substantial evidence. This assertion is based on Plaintiff's claim that Dr. Ryan's opinion (R. at 247-54) is vague, due to its use of the term "moderate limitations" (R. at 249) without providing any additional information. Plaintiff contends that an opinion utilizing such unsupported terms is untenable for evaluating a claimant's RFC, making the report non-substantial evidence. See Burgess v. Astrue, 537 F.3d 117, 128-29 (2d Cir. 2008) (citing Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000), *superceded by statute on other grounds*, 20 C.F.R. § 404.1560(c)(2)).

An expert's opinion can be deemed "not substantial" when the expert describes the claimant's impairments in terms which are "so vague as to render it useless in evaluating" Plaintiff's RFC. Id. Further, an expert's opinion cannot be considered substantial evidence when such terms are accompanied by no additional information, so as to prevent the ALJ, as a layperson, from being able to make the necessary inference whether Plaintiff can perform the particular requirements of a specified type of work. See Curry, 209 F.3d at 123.

Here, Dr. Ryan's mere use of the phrase "moderate limitations" does not render his opinion vague or non-substantial for purposes of the ALJ's RFC determination. In his report, Dr. Ryan opines that "[Plaintiff] may have moderate limitation currently in learning new tasks and performing some complex tasks." (R. at 249). This language certainly rises beyond the level of ambiguous phrasing that Plaintiff would like the Court to construe it as. Rather, the challenged portion of Dr. Ryan's report is supported by both medical tests and observations made on Plaintiff. As mentioned above, Dr. Ryan utilized various tests to determine Plaintiff's mental abilities, the resulting observations of which are supportive of

the larger medical conclusions made in his report (R. at 248-49). First, the possibility of moderate limitation in learning new tasks and performing some complex tasks is a rational conclusion that Dr. Ryan could have reached after observing and running medical tests on Plaintiff (R. at 248-49). Moreover, the conclusions made in the challenged sentence supports Dr. Ryan's larger diagnoses of a relatively mild cognitive disorder, short-term remission from alcohol abuse, and Wernicke-Korsakoff syndrome (R. at 249). As the challenged sentence of Dr. Ryan's report is based on the aforementioned observations, which were made pursuant to valid medical tests, and because Plaintiff raises no other challenges to the report, Dr. Ryan's opinion constitutes valid, substantial medical evidence which the ALJ properly utilized when determining Plaintiff's mental RFC. Therefore, the ALJ's mental RFC determination was supported by substantial evidence. See e.g., Coia v. Astrue, No. 07-CV-242, 2010 WL 3081332, at *2, 6 (W.D.N.Y. Aug. 6, 2010); Myles v. Astrue, No. 09-CV-236, 2009 WL 799952, at *4-5 (W.D.N.Y. Mar. 24, 2009).

The second component of Plaintiff's challenge to the ALJ's mental RFC assessment is that the ALJ did not discuss the testimony given by the vocational expert in response to the ALJ's question about memory defects. In particular, Plaintiff claims that the ALJ did not address what effect Plaintiff's need to repeatedly refer to directions would have on his concentration, persistence, or pace while at work, and thus his ability to perform at a job (R. at 35). Yet, the ALJ concluded, based on the vocational expert's testimony, that Plaintiff is capable of making a successful adjustment to other work (R. at 49), indicating that Plaintiff's concerns regarding the need to refer to instructions was a nonissue. By reaching a conclusion in this manner, the ALJ made a determination that could have been rationally reached given the evidence presented. Further, the ALJ is not required to mention every piece of testimony presented to him in order for his decision to be properly

7

made.  See Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983).

This argument is included within a larger contention that the ALJ failed to address Plaintiff's abilities to concentrate in connection with each of Plaintiff's mental work-related functions as required, particularly,  his ability to use judgment, respond to supervision and coworkers, and deal with changes in the work setting.  Plaintiff alleges that, as such, the ALJ did not incorporate all of Plaintiff's limitations into his mental RFC finding.  Regarding the three contested mental work-related functions, the ALJ addressed each at various points in his decision.  Plaintiff's ability to respond to supervision and coworkers and to deal with changes in the work setting was addressed when the ALJ found that Plaintiff possessed the capacity to perform simple, routine, low-stress tasks with limited contact with the public, and could maintain a schedule with the aid of a calendar  (R. at 45).  This determination was based on the ALJ's consideration of Dr. Ryan's findings that Plaintiff demonstrated no significant limitation in his ability to follow and understand simple directions, perform simple tasks, maintain a regular schedule, relate with others, and deal with stress (R. at 47-48).  Next, though the ALJ did not directly reference Plaintiff's ability to use judgment, he did mention Dr. Ryan's conclusion that Plaintiff could generally make adequate decisions (R. at 48).  Further, the ALJ is "not require[d] [to mention] every item of testimony presented to him or [explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur, 722 F.2d at 1040.

11.     Plaintiff's second argument is that the ALJ improperly evaluated his credibility.  In assessing Plaintiff's credibility, the ALJ determined that Plaintiff's subjective complaints of debilitating memory limitations were not credible to the extent that they were inconsistent with the ALJ's mental RFC assessment (R. at 47).  This assessment was

based on the inconsistencies found between Plaintiff's own statements and activities (R. at 10-11, 16-17, 23, 44, 46), and the inconsistencies found between Plaintiff's allegations of severely debilitating mental limitations (R. at 10-11, 44) and Dr. Ryan's medical determination that Plaintiff merely possessed moderate mental limitations (R. at 47, 249). Plaintiff's twofold argument is that the ALJ's credibility assessment was improper because Plaintiff's good work history weighs in favor of his credibility and the ALJ's mental RFC determination failed to consider the subjective difficulties Plaintiff allegedly had performing certain activities.

First, contrary to Plaintiff's assertion, the ALJ's decision does make reference to Plaintiff's prior work history (R. at 45-46). Further, prior work history is not determinative of a claimant's credibility, rather, it is merely one of many factors that an ALJ can consider when assessing credibility. 20 C.F.R. § 404.1529(c)(3); Campbell v. Astrue, 465 F. App'x 4, 7 (2d Cir. 2012); Carvey v. Astrue, 380 F. App'x. 50, 53-54 (2d Cir. 2010); Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998). Moreover, even if Plaintiff's good work history had not been directly mentioned, it would not undermine the ALJ's credibility assessment because it is supported by substantial evidence. Wavercak v. Astrue, 420 F. App'x. 91, 94 (2d Cir. 2011). Rather, in spite of his work history, Plaintiff undermined his own credibility by giving various inconsistent statements regarding his alleged mental limitations and admitted activities. First, Plaintiff contends that he has difficulty learning and remembering how to do new tasks without some form of assistance (R. at 10-11), but then explains his current practice of using a notebook to remember places he needs to go and things he needs to do (R. at 11), rectifying this limitation and rendering this argument moot. Next, Plaintiff asserts that he relies on his parents to do the majority of the household chores (R. at 17), but then details that he is physically and mentally able to participate in

9

hobby clubs, restore coins, and cook for himself (R. at 13, 16-17). Due to these contradictory statements, it would have been permissible for the ALJ to reduce the amount of credibility he afforded to Plaintiff, despite his work history.

Further, as explained above, Dr. Ryan's report was credible evidence upon which the ALJ could rely and constitutes substantial evidence regarding Plaintiff's mental abilities and limitations. In relying on Dr. Ryan's opinion, the ALJ exercised his discretion to evaluate the credibility of the Plaintiff's testimony and render an independent judgment regarding the extent of Plaintiff's symptoms based on the medical findings and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 186 (2d Cir. 1984). After comparing Plaintiff's testimony with Dr. Ryan's medical observations and conclusions, and observing the self-contradictory nature of Plaintiff's own statements, the ALJ found that Plaintiff's allegations were not credible in light of all the record evidence, a determination within the ALJ's province as the trier of fact. See e.g. Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).

Second, the ALJ's mental RFC determination properly considered the subjective difficulties Plaintiff allegedly had driving, shopping, and restoring coins, as well as Plaintiff's home life and daily living situation. The ALJ considered Plaintiff's statements regarding his memory problems, including Plaintiff's ability to do things with the help of a notebook, his plans to get a personal digital assistant to keep track of tasks, and his dependence on electronic devices, such as his car's GPS, for directions (R. at 10-11, 16, 20, 46-47). The ALJ also referenced Plaintiff's testimony that, while his attention span and ability to complete tasks quickly was not the same as it had been regarding complex activities, he experienced less difficulty with more mechanical tasks (R. at 23, 47). Further, the ALJ assessed and considered Plaintiff's home life and daily living situation, as demonstrated

when the ALJ noted that Plaintiff's parents did most of the household chores, and Plaintiff admitted that he was able to care for his personal needs, cook, clean up after himself, shop, drive with the assistance of a GPS, use a computer, go out to eat, and participate in hobbies and hobby clubs (R. at 13, 16-17, 21, 25-26, 28, 44, 46-47, 145-46, 148, 244, 249, 253); 20 C.F.R. § 404.1529(c)(3); Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009).

The ALJ's RFC assessment determined that Plaintiff retained the ability to perform simple, routine, low-stress tasks with limited public contact, and could maintain a schedule with the help of a calendar (R. at 45). Thus, it is clear that the ALJ gave some credit to Plaintiff's testimony regarding his alleged difficulty with certain tasks and considered it when making his RFC determination. While the ALJ did not credit Plaintiff's allegation that he cannot keep a full-time work schedule (R. at 29-32, 45-47), the ALJ need not accept Plaintiff's subjective complaints as fact without further question or inquiry. See Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). Rather, the ALJ must evaluate these allegations in light of the objective medical and non-medical evidence, including the consistency of statements, availability of evidence, and Plaintiff's treatment history and daily activities. 20 C.F.R. § 404.1529(c)(4). When the record evidence permits the Court to "glean the rationale of an ALJ's decision," as is the case here, the ALJ is not required to mention "every item of testimony presented to him" or explain "why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur, 722 F.2d at 1040.

As the record evidence does not suggest that Plaintiff was limited to the extent he alleged, the ALJ properly considered Plaintiff's statements in light of and along with the rest of the medical evidence presented (R. at 45-48) when determining Plaintiff's credibility.

Because the ALJ's credibility determination was made in light of medical findings and other evidence in the record, see Mimms, 750 F.2d at 186, his decision to not credit Plaintiff's testimony about the severity of his functional limitations was proper and supported by substantial evidence.  See Rivers v. Astrue, 280 F. App'x 20, 22-23 (2d Cir. 2008).

12.     Plaintiff's third argument is that the ALJ's determination that there were jobs in the national economy which Plaintiff could perform was not supported by substantial evidence.  To this extent, Plaintiff asserts that the ALJ's mental RFC determination  was not supported by substantial evidence, based on the errors discussed above, causing him to pose improper hypothetical questions to the vocational expert.  As such, Plaintiff asserts that the answers given by the vocational expert also cannot be considered to be based on substantial evidence.  Thus, Plaintiff claims that the ALJ could not have relied upon those answers when determining that there were in fact jobs in the national economy which Plaintiff could perform.

It is within the providence of the ALJ to rely on a vocational expert's testimony concerning the availability of jobs suited to a claimant's vocational factors and properly established RFC.  20 C.F.R. § 404.1566(e).  As the ALJ's mental RFC determination was based on his proper weighing and consideration of the record evidence, the ALJ's hypothetical questions to the vocational expert matched Plaintiff's RFC (R. at 33, 45-48).  As such, the ALJ was justified in relying on the vocational expert's testimony in regards to the work Plaintiff could perform, for which a significant number of jobs exist in the national economy (R. at 33-34), and the extent to which such work would require Plaintiff to maintain attention and concentration (R. at 34-35).

13.     After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective

medical evidence and supported medical opinions. It is clear to this Court that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in finding that Plaintiff is not disabled. Accordingly, finding no reversible error and further finding that substantial evidence supports the ALJ's decision, this Court will grant Defendant's Motion for Judgment on the Pleadings.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:   June 30, 2013
          Buffalo, New York


                                        /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                            Chief Judge
                                    United States District Court